UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Laura Elias | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants | |
| David Pierce<br>Azita Mirzaian | Christopher Cummiskey | |

**Proceedings:** **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** (filed February 8, 2013)

## I.   INTRODUCTION

Plaintiff Richard Machowicz ("Machowicz") and his wholly-owned LLC, Mindlab Media ("Mindlab") (collectively, "plaintiffs"), filed the instant action on April 21, 2011. On February 6, 2012, the Court granted defendant UCT's motion to dismiss plaintiff's First Amended Complaint without prejudice.  Dkt. No. 65.  Plaintiff filed the operative Second Amended Complaint ("SAC") on February 28, 2012, against defendants LWRC International, LLC ("LWRCI"), UCT Arms, LLC ("UCT"), Tango Down, Inc., SPS Technologies, LLC, NICORR, and Over the Beach.[1]  The SAC asserts five claims for relief: (1) Copyright Infringement pursuant to 17 U.S.C. §§ 101 et seq.; (2) Lanham Act violations pursuant to 15 U.S.C. § 1125; (3) common law right of publicity; (4) violation of Cal. Civ. Code § 3344; and (5) violation of Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL").  Dkt. No. 72.

Thereafter, plaintiffs dismissed defendants Nicorr, UCT, and SPS Technologies from this action pursuant to Fed. R. Civ. P. 41.  Dkt. Nos. 75, 77, 89.  The Court then dismissed defendant Tango Down with prejudice pursuant to the parties' stipulation, leaving only defendant LWRCI.  Dkt. No. 106.

---

[1] Defendant "Over the Beach" is named only as "an unknown business entity" and has not been served with the summons or complaint in this action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

On February 8, 2013, plaintiff Mindlab filed a motion for summary judgment as to its first claim for copyright infringement. Defendant opposed the motion on February 25, 2013, and plaintiff filed a reply on March 4, 2013. The Court held a hearing on March 18, 2013. After considering the parties' arguments, the Court finds and concludes as follows.

## II.   BACKGROUND

Machowicz is a television personality who has hosted numerous television shows with national and international viewership, including "Future Weapons," "Weapons that Changed the World," "Deadliest Warrior," and "Most Lethal." Plaintiff's Undisputed Material Facts ("PUMF") ¶¶ 1–2. He is also a former Navy Seal, the author of a best-selling book Unleash the Warrior Within, a weapons expert, and a motivational speaker. PUMF ¶ 3. Mindlab is the business entity responsible for loaning out the services of Machowicz, its managing member, and for holding any intellectual property associated with him. PUMF ¶ 4.

Defendant LWRCI is an developer, manufacturer, marketer, and seller of sophisticated firearm weapons and accessories. PUMF ¶ 6. LWRCI was created in April 2008, following an asset purchase from Lietner-Wise Rifle Company, and bills itself as a sophisticated developer and manufacturer of accurate and reliable firearm weapons and accessories. PUMF ¶¶ 7, 9. Defendant advertises its products through print advertisements in magazines and other "gun periodicals" and over the internet. Id. ¶ 8.

In May or June 2010, Machowicz contacted LWRCI about obtaining an LWRCI rifle for use on a television show on Spike TV. PUMF ¶ 10. Machowicz testifies that he agreed to send LWRCI's executive vice president, Darren Mellors, an autographed photo of himself with the weapon, and that LWRCI agreed to send plaintiff one of its rifles. PUMF ¶ 11. In June of 2010, LWRCI sent a rifle to plaintiff. PUMF ¶ 12. Per Mellor's instructions, the packing list and invoice that accompanied the delivery of the rifle stated "TO BE USED ON SPIKE TV AS ADVERTISING," presumably in reference to the rifle. PUMF ¶¶ 13–15.

On January 9, 2011, Machowicz emailed a photograph of himself holding an LWRCI rifle to Mellors. PUMF ¶ 17. It is this photograph that Mindlab claims to hold a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

valid copyright registration over. PUMF ¶¶ 23–24. In his email, Machowicz "apolgize[d] for the incredibly long delay in getting these pics to you," and stated that he "hope[d] these [pictures] work for you. I'll be a [sic] Shot Show and also hope to see you there as well." Machowicz Decl. Ex. B. Machowicz also noted that he was beginning to film a new television series which might lend itself to a "big LWRC opportunity." Id.

On January 10, 2011, Mellors responded to Machowicz by email, stating "Thanks for doing that!" and asking: "How can I use the pics? Can I use them in print advertising?" Machowicz Decl. Ex. C; PUMF ¶ 18. Neither Mellors nor LWRCI received a response to these two questions by email, telephone, or through an in-person meeting. PUMF ¶¶ 19–20. Sometime between January 9 and January 16, 2011, Mellors submitted an advertisement containing the photograph to Guns & Ammo magazine. Id. ¶ 24. The magazine containing the advertisement was not published until April 2011. PUMF ¶ 25. In addition, LWRCI placed the photograph on its website on or about January 12, 2011. Id. ¶ 26.

Around this time, plaintiffs began to seek out potential commercial endorsement opportunities with gun manufacturers, including LWRCI. Id. ¶ 16. At "Shot Show" on January 16 in Las Vegas, Nevada, Mellors did not ask Machowicz whether he had permission to use the photo in any advertising, because by the time of Shot Show, LWRCI was already using the photo was in print advertising. Mellors Depo. 153:6–19; 158:16–159:12. Mellors testifies that Machowicz asked him "if the photo worked out," and Mellors responded "yeah, thank you," and no further discussions took place regarding the photo. Id. 159:8–10. After the parties returned from Shot Show, Andrew Lear, business manager for plaintiffs, made at least four phone calls to LWRCI to gauge its interest in retaining plaintiff to endorse its products. See Depo. of Andrew Lear 205:17–206:4; PUMF ¶ 28. None of these calls were answered or returned. Id.

Defendant contends that the parties' dealings in fact date to 2007, when Machowicz and Mellors met at the filming of a show called Future Weapons. Def.'s Additional Undisputed Material Facts ("DUMF") ¶ 1. There, Machowicz told Mellors that he was "impressed with. . . the 7.62 rifle and was interested in getting one." Mellors Depo. 64:10–14. Mellors responded that "if we could do something together, like if I could get a photograph to use, um, in advertising or something, um, that — that I'd be happy to send him one." Id. 64:15–19; DUMF ¶ 2. Machowicz allegedly agreed to this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

proposal, and said to contact his manager, Andrew Lear, to work out the details. DUMF ¶ 3. According to defendant, nothing further transpired between the parties for the next few years.

Then in June 2010, Machowicz called Mellors to tell him that he was impressed with the REPR—one of defendant's rifles—and asked "whatever happened to you sending me one of those rifles[?]" Mellors Depo. 68:4–5; 74:4–10; DUMF ¶ 4. In response, Mellors told Machowicz that he had spoken to Lear, but that Lear "started negotiating with [Mellors] about money," whereas Mellors thought "the deal was about the trade of a photo for use in advertising for the rifle." Id. 68:5–10. At that point, Mellors testifies, plaintiff and Machowicz agreed to the exchange that Mellors had previously discussed with Machowicz, a rifle in exchange for a photo to be used in advertising. Id. 68:11–13, 72:1–21, 74:11–17; DUMF ¶ 4, 6. Mellors then sent plaintiff an email memorializing the parties' conversation and agreement and asking if Machowicz wanted to put any limits on defendant's use of the photograph, although it does not appear that any party submitted this email to the Court. DUMF ¶ 7. Machowicz himself did not respond. Id. ¶ 8. Shortly thereafter, LWRCI sent plaintiff the rifle. As to the notation regarding "Spike TV" contained on the packing slip, Mellors testifies that this information was "a note for accounting to put the cost of that rifle in that category." Mellors Depo. 98:3–5; DUMF ¶ 15. LWRCI shipped the weapon to a firearms distributor near Machowicz's home in Texas. DUMF ¶ 16.

Once Mellors received the email containing the photo on January 9, 2011, as discussed above, he wrote back to Machowicz asking how he could use the photo. Mellors testifies he did so because he wanted Machowicz to feel "in control—of his image and his employment of it;" that he wanted him to "feel comfortable . . . with the arrangement." DUMF ¶ 9; Mellors Depo. 85:1–8. When Machowicz did not respond to Mellor's January 9 email, Mellors apparently decided that Machowicz did not wish to place any restrictions on the use of the photograph by LWRCI. DUMF ¶ 10. Mellors then had the photograph inserted into an advertisement, as previously noted. DUMF ¶ 14; Mellors Depo. 124:14–18 (testifying that the photographs were "obviously staged to showcase our product for use in advertising"). After plaintiff objected to defendant's use of the photograph, this suit followed.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

### III. LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

### IV. ANALYSIS

Plaintiff Mindlab argues that it is entitled to a grant of summary judgment in its favor on its claim for copyright infringement. A copyright infringement claim has two

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications v. Rural Telephone Service Co., Inc., 499 U.S. 340, 361 (1991). In particular, plaintiff contends that there are no disputes of material fact as to its ownership of a valid copyright in the photograph in question, and that defendant wilfully infringed upon multiple of its exclusive rights as a copyright holder. In opposition, defendant argues that disputed issues of material fact on both elements preclude a grant of summary judgment in plaintiff's favor. Each issue is discussed in turn.

   A.   **Ownership**

First, the Court must address the issue of ownership of a copyright. Under 17 U.S.C. § 410(c), "the registration of a copyright certificate constitutes prima facie evidence of the validity of a copyright in a judicial proceeding commenced within five years of the copyright's first publication." Entm't Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217 (9th Cir. 1997).[2] A "copyright in a work . . . vests initially in the author or authors of the work," but "may be transferred in whole or in part by any means of conveyance or by operation of law." 17 U.S.C. § 201(a), (d)(1). Such a transfer must be memorialized in a signed writing, although the writing need not be contemporaneous with an initial oral assignment. 17 U.S.C. § 204(a); see Jules Jordan Video, Inc. v. 144942 Canada, Inc., 617 F.3d 1146, 1156 (9th Cir. 2010). Moreover, only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

In addition, "[i]n the case of a work made for hire, the employer or other person for whom the work was prepared is considered the author for purposes of this title . . . and

---

[2] Contrary to defendant's contention, the registration requirement contained in section 411(a) is not a jurisdictional prerequisite to suit: "although section 411(a)'s registration requirement is a pre-condition to filing a claim, it does not restrict a federal court's subject-matter jurisdiction." Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 615 (9th Cir. 2010) (citing Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

owns all of the rights comprised in the copyright." 17 U.S.C. § 201(b). "Works made for hire," in turn, are works: (1) prepared by an employee within the scope of his or her employment; or (2) specially commissioned for one of various enumerated purposes, including "for use as a contribution to a collective work," so long as the "parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. . . ." 17 U.S.C. § 101.

Defendant notes that it is undisputed that plaintiff's neighbor, J. Alan Barnes, is the person who took the photograph in question, and that he was not an employee of Mindlab at the time he took the photo. DUMF ¶¶ 19–20. From this premise, defendant argues that plaintiff has not demonstrated that Barnes executed a written "work for hire" agreement with Mindlab prior to the photograph being commissioned for one of the statutorily enumerated work for hire purposes, and therefore Mindlab fails to demonstrate ownership of a valid copyright. Defendant primarily focuses on the latter requirement: that the work be "specially ordered or commissioned for use as a contribution to a collective work," or any of the other specifically enumerated categories identified in 17 U.S.C. § 101." Opp'n at 9.

The Court disagrees; Mindlab has adequately demonstrated its ownership of the subject work as a work for hire. At the outset, the Court notes that there is no dispute between the two potential owners of the copyright—Barnes and Mindlab—in this case. In this situation, it is generally "unusual and unwarranted to permit third parties such as the instant defendant[] to invoke § 101 to avoid a suit for infringement." Jules Jordan Video, 617 F.3d at 1157. In support of its ownership of the photo as a work for hire, plaintiff offers a written "Work for Hire Photo Shoot Agreement," signed by both Barnes and Machowicz (on behalf of Mindlab), which recites that Barnes is being commissioned by Mindlab "to photograph Richard 'Mack' Machowicz for photos ('Content') intended for primary use in promoting Machowicz." Reply Decl. of David Pierce, Ex. F.[3] These photos, including the one at issue here, would thus constitute a "collective work," one of the specifically enumerated categories under 17 U.S.C. § 101. One of these promotional

---

[3] Although plaintiff offers this Work for Hire agreement by way of a reply declaration, defendant admits receiving this agreement during discovery. See Decl. of Christopher Cummiskey ¶ 10.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

purposes could clearly be for use in the advertisement in question, as discussed in greater detail below. In opposition, defendant offers no evidence that this photo was not for use in a collection of photos intended for promoting Machowicz, as described in the work for hire agreement.[4] Accordingly, Mindlab is considered the author of the subject work and is a proper party for bringing this suit. A greater showing is not required.

Even assuming that the subject work could not be considered a work for hire, Barnes transferred any interest he had in the subject work to Mindlab through the same "Work for Hire" agreement discussed above. See Pierce Reply Decl. Ex. F (reciting that "Photographer hereby grants and assigns to [Mindlab] all of the rights not so vested . . . free from all restrictions and limitations" in the event the work for hire provision of the agreement is ineffective). Accordingly, the Court finds that plaintiff has adequately demonstrated its ownership of the subject copyright.

Defendant makes a further challenge to plaintiff's ownership of a valid copyright—namely, that plaintiff has failed to demonstrate that the photograph in question is the photograph that actually pertains to the copyright registration at issue, or number VA 1-756-728. Without any evidence of which particular image was submitted to the copyright office to obtain this copyright registration, defendant argues, there is no proof that the photographs that defendant used in its advertising are covered by this registration number. Opp'n at 11. This argument is without merit. Plaintiff offers the Certificate of Registration for VA 1-765-728, which indicates title of the work is "J. Alan Barnes Photo of Richard 'Mack' Machowicz," and that the registration was certified by attorney David Pierce. And in his reply declaration, plaintiff's counsel offers a copy of the subject work that was submitted to obtain this copyright registration number, which he testifies was produced during discovery to defendant. Pierce Reply Decl. Ex. I. Defendant offers no evidence to the contrary. This, in addition to the Certificate of

---

[4] Contrary to defendant's argument, the cited testimony of Machowicz simply does not demonstrate that this was simply "a one time photo taken by his neighbor." See Machowicz Depo. 225:1–10; 228:11–232:10. The testimony supports an inference that the photo in question was taken by his neighbor, but does not address whether the photo was taken for purposes of a collection or not. As such, the express terms of the Work for Hire agreement are determinative here, absent any evidence to the contrary.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

Registration itself, is sufficient to demonstrate that the VA 1-765-728 registration corresponds to the photograph in question.

**B.    Infringement**

The Court concludes, however, that disputed issues of material fact preclude a grant of summary judgment in plaintiff's favor on the issue of infringement, willful or otherwise. In particular, the parties dispute whether defendant had "permission" to use the copyrighted work in its print advertising.

Although neither party discusses the applicable legal framework, the principles governing grants of non-exclusive copyright licenses are well-established. Generally, as plaintiff argues, transfer of copyright ownership must be in writing. 17 U.S.C. § 204. Under 17 U.S.C. § 101, however, grants of a non-exclusive license to use a copyrighted work are not a "transfer of copyright ownership," and hence are not subject to the writing requirement. Effects Associates, Inc. v. Cohen, 908 F.2d 555, 558 (9th Cir. 1990). "[N]onexclusive licenses may therefore be granted orally, or may even be implied from conduct." M. Nimmer & D. Nimmer, Nimmer on Copyright § 10.03[A][7], at 10–53 (2012); see Foad Consulting Group, Inc. v. Azzalino, 270 F.3d 821, 825–26 (9th Cir. 2001); Oddo v. Ries, 743 F.2d 630, 634 (9th Cir. 1984). The Ninth Circuit has developed a three part test for determining whether a creator has issued an implied non-exclusive license. Under this test, an implied license exists where "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work." Assets Marketing Systems, Inc. v. Gagnon, 542 F.3d 748, 754 (9th Cir. 2008) (quoting I.A.E., Inc. v. Shaver, 74 F.3d 768, 776 (7th Cir. 1996)).[5]

---

[5] Although this "copy and distribute" language was adopted from cases involving implied licenses for the use of computer software programs, special effects for a movie, and architectural drawings, the Court is of the view this language applies equally to the copying of a photograph for use in an advertisement. In any such case, the ultimate question is one of the purported licensor's objective manifestations of intent. See Nimmer on Copyright § 10.03[A][7], at 10–55.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

When considering the third element of this test, the licensor's intent, courts consider whether the totality of the parties' conduct indicates that the licensor intended to grant the licensee permission to use the work. Nimmer on Copyright § 10.03[A][7], at 10–53; see also Michaels v. Internet Entertainment Group, Inc., 5 F. Supp. 2d 823, 831 (C.D. Cal. 1998); Montwillo v. Tull, 632 F. Supp. 2d 917, 924 (N.D. Cal. 2008). Moreover, the relevant intent is "the licensor's objective intent at the time of the creation and delivery," not subjective intent. Assets Marketing Systems, Inc., 542 F.3d at 756. Intent to create a license exists when an author creates a work with the knowledge and intention that it will be used by the licensee for a specific purpose. Bangkok Broadcasting & T.V. Co., Ltd. v. IPTV Corp., 742 F. Supp. 2d 1101, 1111 (C.D. Cal. 2010) (quoting SHL Imaging, Inc. v. Artisan House, Inc., 117 F. Supp. 2d 301, 317 (S.D. N.Y. 2000)).

For one, as discussed above, the parties dispute whether they in fact entered into an oral agreement that granted defendant a non-exclusive license to use the photograph in question. Without making credibility determinations, the Court cannot resolve this dispute in either party's favor on this motion. Moreover, on all three factors of the test for the creation of an implied non-exclusive license, disputed issues of material fact preclude a grant of summary judgment in plaintiff's favor.[6] As set forth in detail above, both parties point to conflicting evidence in the record as to whether plaintiff granted defendant an implied license to use the photograph in question in exchange for one of

---

[6] Plaintiff's argument that defendant is "precluded" from claiming that it sought anything less than an exclusive license in the photograph is without merit. Plaintiff cites to no authority for the proposition that defendant's placement of the designation "© 2011 LWRC INTERNATIONAL, LLC. ALL RIGHTS RESERVED" precludes defendant from claiming that it had permission to use the photograph in this advertisement, pursuant to a grant of a nonexclusive license, made orally or otherwise. Section 401(b) sets forth the form of notice that suffices to place others on reasonable notice of the purported ownership of a work. This section says nothing about whether the use of such a symbol precludes a party from claiming complete ownership over not only a work as a whole, but all of the underlying elements of a work as well. In light of the other objective manifestations of the parties' intent in the record, plaintiff may argue as much at trial, but this fact alone does not entitle plaintiff to a grant of summary judgment in its favor.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 11-3405-CAS (FFMx) | Date | March 18, 2013 |
|---|---|---|---|
| Title | MINDLAB MEDIA, LLC, ET AL. V. LWRC INTERNATIONAL, LLC, ET AL. | | |

defendant's firearms. First, it is disputed whether or when defendant requested that Machowicz take a photograph of himself with defendant's firearm. Plaintiff contends that such a discussion never took place, yet defendant offers Mellor's testimony to the contrary, in addition to noting Machowicz's email sending the picture in question, which states that he "hope[s] these [pictures] work for you." DUMF ¶ 21. Second, the parties do not dispute that plaintiff emailed (or delivered) the subject work to defendant. Whether this work was created specifically for defendant's use is again disputed, but because the picture depicted Machowicz holding LWRCI's rifle, a jury could infer based on the parties' testimony that this picture was in fact of the type allegedly requested by defendant. Third, disputed issues of material fact exist as to whether the "totality" of plaintiff's conduct indicated an intent to grant defendant permission to use the work for promotional purposes. See Estate of Hevia v. Portrio Corp., 602 F.3d 34, 41-42 (1st Cir. 2010) (holding that "the copyright owner's intent is the touchstone for determining whether such an implied license has been granted"). Because of the conflicting testimony and inferences therefrom in the record, this determination depends, in part, on credibility determinations that are reserved for the factfinder at trial. Accordingly, the Court denies plaintiff's motion for summary judgment as to the issue of infringement; plaintiff may have granted defendant either an oral or implied non-exclusive license to use the subject work.

## V.     CONCLUSION

In accordance with the foregoing, plaintiff's motion for summary judgment is hereby GRANTED in part and DENIED in part.[7]

IT IS SO ORDERED.

|  | 00 : 07 |
|---|---|
| Initials of Preparer | CMJ |

---

[7] The Court declines to frame its conclusions herein in terms of the "issues" proposed by counsel for plaintiff at oral argument and in its briefing. Pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, the parties may address these issues by way of the pre-trial conference order.